IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LORETTA FERGERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv377-WHA |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by Loretta Fergerson ("Fergerson") to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## I.  INTRODUCTION

On January 6, 2012, Fergerson pled guilty under a plea agreement to conspiracy to

defraud the United States with respect to claims, in violation of 18 U.S.C. § 286; wire fraud,

in violation of 18 U.S.C. § 1343; and aggravated identity theft, in violation of 18 U.S.C.

§ 1028A.[1]   After a sentencing hearing conducted on May 15 and 16, 2012, the court

sentenced Fergerson to 115 months in prison, comprising concurrent terms of 91 months on

the conspiracy and wire-fraud counts and a mandatory consecutive term of 24 months for

aggravated identity theft.  Fergerson did not appeal.

---

[1] As part of the plea agreement, the Government dismissed fourteen counts against
Fergerson for filing false claims in violation of 18 U.S.C. § 287, two additional counts of wire
fraud, and a second count of aggravated identity theft.  The plea agreement contained a waiver
of Fergerson's right to appeal or collaterally attack her conviction and sentence except on
grounds of ineffective assistance of counsel and prosecutorial misconduct.

On May 28, 2013, Fergerson filed this § 2255 motion, asserting that:

1.     Her trial counsel rendered ineffective assistance by–

    (a)    failing to adequately challenge the loss attributed to her for sentencing purposes;

    (b)    failing to challenge the two-level leadership enhancement under U.S.S.G. § 3B1.1(c);

    (c)    failing to challenge the district court's finding regarding the number of victims of her offense for purposes of U.S.S.G. § 2B1.1(b)(2); and

    (d)    failing to raise an *ex post facto* argument regarding the version of the Sentencing Guidelines used in her case.

2.     The district court abused its discretion by using a modified "ultra conservative" methodology to calculate loss in her case

Doc. No. 1 at 4-14; Doc. No. 4 at 3-13.[2]

On January 13, 2015, Fergerson filed an amendment to her § 2255 motion to add claims that:

1.     Her trial counsel was ineffective for failing to argue that Application Note 2 to U.S.S.G. § 2B1.6 precluded any enhancement in her case for loss, leadership role, or number of victims.

2.     Her two-year sentence for aggravated identity theft violates the Supreme Court's holding in *Alleyne v. United States*, ___ U.S.

---

[2] Unless otherwise indicated, document numbers ("Doc. No.") referred to in this Recommendation are those assigned by the Clerk in the instant civil action. References to exhibits ("Ex.") are to those filed by the Government with its response, Doc. No. 13. Page references, except to those in the Presentence Investigation Report ("PSI"), are to those assigned by CM/ECF.

___, 133 S.Ct. 2151 (2013).

Doc. No. 20.

The Government filed a response and supplemental response to Fergerson's § 2255 motion as amended.  Doc. Nos. 13 & 22.  Fergerson replied to those responses.  Doc. Nos. 17 & 24.  After considering the parties' submissions, the record and the relevant law, the court finds that Fergerson's § 2255 motion should be denied without an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or  (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004)

3

(citations omitted).

### B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).   "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The

prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Failure to Adequately Challenge Attributed Loss*

Fergerson argues that her trial counsel rendered ineffective assistance by failing to adequately challenge the loss attributed to her for sentencing purposes.  Doc. No. 1 at 5-7; Doc. No. 4 at 4-7.

Under § 2B1.1(b)(1) of the Sentencing Guidelines, the offense level for a defendant convicted of certain economic offenses is subject to a specific-offense-characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss.  U.S.S.G. § 2B1.1(b)(1).  Application

5

notes clarify that the "loss is the greater of actual loss or intended loss."[3]  U.S.S.G. § 2B1.1,

cmt. n.3(A).   In the context of fraud offenses, sentencing based on intended loss is

appropriate even where no actual loss occurred.  *United States v. Menichino*, 989 F.2d 438,

442 (11th Cir. 1993); *see, e.g., United States v. Willis*, 560 F.3d 1246, 1250-51 (11th Cir.

2011) (finding that intended loss included defendant's fraudulent claims to FEMA that were

not paid).

Here, the court found that the loss (whether actual loss or intended loss) attributable

to Fergerson for her criminal conduct was approximately $4,364,000, arising from

Fergerson's operation of a fraudulent tax-refund scheme.  Ex. 8 at 77-78, 91.  Based on this

finding, and applying § 2B1.1(b)(1), the court imposed an 18-level enhancement to

Fergerson's offense level.   *See* U.S.S.G. § 2B1.1(b)(1)(J), (K) (providing for 18-level

specific-offense-characteristic enhancement where the loss was more than $2,500,000 but

less than $7,000,000).

The factual basis for Fergerson's guilty plea indicated, among other things, that she

ran a fraudulent tax-refund scheme through her tax-preparation business, Fast Tax Cash; that

she and her employees used stolen personal information (including individuals' names and

Social Security numbers) to prepare and file numerous false tax returns during the 2005

through 2008 tax-filing seasons; that "a majority of the tax returns that were prepared at Fast

---

[3] "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted
from the offense."  U.S.S.G. § 2B1.1, cmt. n.3(A)(i).  "Intended loss," on the other hand, means
"the pecuniary harm that was intended to result from the offense," including pecuniary harm
"that would have been impossible or unlikely to occur."  *Id*., cmt. n.3(A)(ii).

Tax Cash either contained false information designed to illegally obtain higher refunds that clients were not entitled [to] or were prepared using stolen personal information"; and that part of the fraudulent scheme involved cashing tax-refund checks based on stolen personal information.  Ex. 2 at 10-11.

At the May 15, 2012, sentencing hearing, IRS Special Agent Chris Forte testified that over 90% of the tax returns he audited that were filed through Fast Tax Cash were fraudulent.[4]  Ex. 8 at 56-57.  For the period reviewed by Agent Forte, Fast Tax Cash filed returns containing approximately $5.8 million in refund claims.  *Id*. at 14.

Fergerson's counsel thoroughly cross-examined Agent Forte and challenged the methodology used by the Government to estimate the percentage of fraudulent returns filed by Fast Tax Cash.  *Id*. at 33-43, 49-59, 62-66, 71-76.  Counsel also objected to the finding in the Presentence Investigation Report ("PSI") that Fergerson was accountable for a loss of "at least $3,000,000" and vigorously challenged the loss attributed to her under § 2B1.1(b)(1).

The district court rejected defense counsel's arguments.  Crediting Agent Forte's testimony that over 90% of the Fast Tax Cash tax returns he audited were fraudulent and applying a modified "ultra conservative approach" to calculating tax loss, *see United States*

---

[4] Agent Forte testified that he audited a sample of 40 to 50, out of 1,566, tax returns filed by Fast Tax Cash for the 2004 through 2008 tax years.  Ex. 8 at 33, 36, 56-57.

*v. Jordan*, 374 Fed. App'x 3 (11th Cir. 2010),[5] by estimating (conservatively) that 75% of the tax returns in Fergerson's case were fraudulent, the court found by a preponderance of the evidence that the loss attributable to Fergerson for her criminal conduct was approximately $4,364,000 (i.e., approximately 75% of the approximately $5.8 million in refund claims filed by Fast Tax Cash during the period reviewed). Fergerson neither demonstrates that this finding was erroneous nor identifies a plausible argument or evidence that her trial counsel could have presented that was reasonably likely to change the district court's loss determination. Failing to show either deficient performance by counsel or resulting prejudice, Fergerson is not entitled to relief based on this claim of ineffective assistance of counsel.

<u>Use of Modified "Ultra Conservative" Methodology to Calculate Loss</u>

Fergerson also presents a freestanding claim that the district court abused its discretion by using a modified "ultra conservative" methodology to calculate loss in her case. Doc. No. 1 at 12-14; Doc. 4 at 10-12. However, this claim is barred by the waiver provision in the plea agreement, under which Fergerson waived her right to appeal or collaterally attack her conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. Ex. 2 at 13-14. In this circuit, such waivers have been enforced

---

[5] In *Jordan*, an IRS special agent testified that most of the tax returns filed by the defendant's tax preparation business were suspected of containing fraudulent refund claims. *See* 374 Fed. App'x at 6. The agent stated that he then took an "ultra conservative" approach and counted only half of those tax returns in estimating the intended loss of the fraudulent tax refund scheme. *Id*. The Eleventh Circuit held that the district court properly credited the agent's testimony in determining the loss. *Id*. at 7.

consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (collecting cases). At the change of plea hearing, the magistrate judge ascertained from Fergerson that she understood the waiver provision in her plea agreement. Ex. 3 at 9. In addition, the written plea agreement contains Fergerson's signature under language acknowledging that she had read and understood the plea agreement and that the matters and facts in the written agreement accurately reflected all representations made to her and all the terms reached. Ex. 2 at 19; *see* Ex. 3 at 4-5. Fergerson does not demonstrate – or even allege – that she did not understand the consequences of the waiver provision. Consequently, her present claim is barred from review.

This claim is also barred because it was not pursued on direct appeal. Ordinarily, if an available claim is not advanced on direct appeal, it is procedurally barred in a § 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994). "A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Lynn*, 365 F.3d at 1234-35 (quoting *Mills*, 36 F.3d at 1055). Fergerson does not

demonstrate cause for her failure to present this claim on appeal.  Nor does she make the showing of actual innocence required to overcome her procedural default.  Consequently, this claim is foreclosed from review.

Even if Fergerson asserted ineffective assistance of counsel as cause for her procedural default, she would not prevail.  As noted above, at sentencing, defense counsel challenged the methodology used to calculate loss in Fergerson's case.  And the waiver provision in the plea agreement precluded counsel from pursuing this substantive claim on appeal.  Finally, as also noted above, Fergerson demonstrates no error in the district court's determination of attributable loss in her case.  As the Eleventh Circuit has recognized, the Sentencing Guidelines do not require the United States to establish the amount of loss with precision.  *Jordan*, 374 Fed. App'x at 7 ("'[T]he guidelines contemplate that the court will simply make a reasonable estimate based on the available facts.'" (quoting U.S.S.G. § 2T1.1 cmt. n.1.)).  Fergerson is not entitled to relief based on this claim.

### 2. *Failure to Challenge Two-level Leadership Enhancement under U.S.S.G. § 3B1.1(c)*

Fergerson maintains that her trial counsel rendered ineffective assistance by failing to challenge the two-level leadership enhancement applied to her sentence under U.S.S.G. § 3B1.1(c).[6]  Doc. No. 1 at 8; Doc. No. 4 at 7-8.

The Government and the PSI recommended that Fergerson receive a *four*-level

---

[6] Under § 3B1.1(c), the sentencing court must apply a two-level enhancement where the defendant was an organizer, leader, manager, or supervisor in a sufficiently extensive conspiracy. U.S.S.G. § 3B1.1(c).

leadership enhancement under § 3B1.1*(a)*, because she was an organizer or leader of a conspiracy involving five or more participants.[7]  *See* PSI at 12, ¶ 41.  Her trial counsel successfully argued that the conspiracy involved fewer than five participants, and thus she should receive only the two-level leadership enhancement provided by subsection (c) of § 3B1.1.  *See* Ex. 9 at 47-48.  Fergerson, however, now claims that *no* leadership enhancement was warranted in her case because she did not "lead, manage, or supervise." Doc. No. 1 at 8.  This claim lacks merit, because there was ample evidence that Fergerson handled the day-to-day management of the fraudulent tax-return scheme run through *her* business, Fast Tax Cash, that the scheme involved several participants, and that Fergerson trained her employees to file fraudulent tax returns.  *See, e.g.*, Ex. 8 at 43-45; Ex. 9 at 45. Fergerson's counsel did well in arguing successfully that she should receive only the two-level enhancement, instead of the four-level enhancement, based on the number of participants in the criminal activity.  Her counsel was not ineffective for failing to challenge the two-level leadership enhancement under § 3B1.1(c), and she is not entitled to any relief based on this claim.

### 3. Failure to Challenge Finding Regarding Number of Victims and Failure to Raise ex Post Facto Argument Regarding Version of Sentencing Guidelines

Fergerson claims that her trial counsel rendered ineffective assistance by failing to

---

[7] Under § 3B1.1(a), the sentencing court must apply a four-level enhancement where the defendant was an organizer or leader of criminal activity involving five or more participants. U.S.S.G. § 3B1.1(a).

challenge the district court's finding that her offense involved 50 or more victims and therefore warranted a four-level enhancement under U.S.S.G. § 2B1.1(b)(2)(B).[8]  Doc. No. 1 at 9; Doc. No. 4 at 8-9.  In a related claim, she argues that her counsel was ineffective for failing to argue that use of the 2011 Guidelines in her case caused the PSI and the district court to overstate the number of her victims for purposes of § 2B1.1(b)(2), yielding a higher sentencing range, in violation of the Ex Post Facto Clause.  Doc. No. 1 at 10; Doc. No. 4 at 9-10.

In its response to these claims, the Government observes that its sentencing exhibits, the testimony of Agent Forte, and Fergerson's own admissions in the plea agreement established that the number of Fergerson's victims easily exceeded the 50 individuals required for the four-level enhancement in § 2B1.1(b)(2)(B).  During a search of Fast Tax Cash, federal agents seized 135 client folders containing stolen identities.  Further investigation revealed that Fergerson and/or her coconspirators used 118 of these stolen identities to file false tax returns, for which 118 tax refunds were fraudulently obtained.  Ex. 7 at 46-48*; see* PSI at 12, ¶ 40.

The gist of Fergerson's argument is that the taxpayers whose identities and tax refunds were stolen through her scheme were not victims under § 2B1.1(b)(2) because they sustained no economic loss, presumably because the IRS ultimately reimbursed them.  However, the

---

[8] Section 2B1.1(b)(2)(B) of the Sentencing Guidelines calls for a four-level specific-offense-characteristic enhancement for certain economic offenses involving 50 or more, but fewer than 250, victims.  *See* U.S.S.G. § 2B1.1(b)(2)(B) & (C).

Eleventh Circuit has interpreted the term "victim" in § 2B1.1(b)(2) to include a reimbursed party who suffered loss. *United States v. Lee*, 427 F.3d 881, 895 (11th Cir 1995); *United States v. Nikoghosyan*, 408 Fed. App'x 272, 274 (11th Cir. 2011); *United States v. Smiley*, 210 Fed. App'x 972, 975 (11th Cir. 2006) ("The fact that the [victims] elect not to seek restitution does not mean that they did not sustain an actual loss."); *United States v. Cornelius*, 202 Fed. App'x 437, 439 (11th Cir. 2006).

Therefore, although Fergerson's victims may later have been reimbursed by the IRS, they are properly considered as victims for purposes of § 2B1.1(b)(2).  Fergerson does not demonstrate that, had her counsel argued that her offense involved fewer than 50 victims and insisted that the Government be put to the task of presenting further evidence and argument concerning the stolen identities and stolen tax refunds of the individuals victimized by her scheme, the outcome of the proceedings would have been different, i.e., that the district court would have found that the four-level enhancement under § 2B1.1(b)(2)(B) did not apply to her offense conduct.  Therefore, she is not entitled to any relief based on this claim of ineffective assistance of counsel.

Fergerson also argues that use of the 2011 Guidelines (which were in effect when she was sentenced) instead of the 2008 Guidelines (which were in effect when her criminal conduct concluded) caused the PSI and the district court to overstate the number of her victims for purposes of § 2B1.1(b)(2) and thereby increased her Guidelines sentencing range,

in violation of the Ex Post Facto Clause.[9]  Doc. No. 1 at 10; Doc. No. 4 at 9-10.  She

contends that her trial counsel was ineffective for failing to raise this argument at sentencing.

*Id*.

In making this argument, Fergerson observes that Application Note 4(E) to §

2B1.1(b)(2), contained in the 2011 Guidelines but not in the 2008 Guidelines, broadens the

definition of "victim" for economic crimes involving identify theft to provide that, in such

cases, "'victim' means (i) ['any person who sustained any part of the actual loss,' U.S.S.G.

§ 2B1.1 cmt. n.1]; or (ii) *any individual whose means of identification was used unlawfully

or without authority*."  U.S.S.G.  §  2B 1.1 cmt. n.4(E) (emphasis added).   Prior to

implementation of Application Note 4(E), which became effective in November 2009, a

"victim" for purposes of § 2B1.1(b)(2) must have sustained an economic loss or bodily

injury.  *See* U.S.S.G. § 2B1.1  cmt. n.1(A) & (B) (2008).   However, Fergerson's victims

could properly be considered as "victims" for purposes of § 2B1.1(b)(2) under both the 2011

Guidelines and the (pre-Application Note 4(E)) 2008 Guidelines.  Consequently, no *ex post*

---

[9] The Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 10, protects people from, among other things, being subjected to a punishment more severe than that prescribed when the crime was committed.  *See United States v. De La Mata*, 266 F.3d 1275, 1286 (11th Cir. 2001).  As a general rule, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  U.S.S.G. § 1B1.11(a).  However, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."  U.S.S.G. § 1B1.11(b)(1).  *See Peugh v. United States*, ___ U.S. ___, 133 S.Ct. 2072, 2084 (2013) (holding that the Ex Post Facto Clause is violated when a defendant is sentenced under a version of the guidelines promulgated after she committed her crime if the newer version of the guidelines yields a higher sentencing range).

*facto* violation resulted from use of the 2011 Guidelines at her sentencing.  Therefore, Fergerson is not entitled to relief based on this claim of ineffective assistance of counsel.

## C.   Claims in Amendment to § 2255 Motion

In an amendment to her § 2255 motion filed on January 13, 2015, Fergerson adds claims that (1) her trial counsel was ineffective for failing to argue that Application Note 2 to U.S.S.G. § 2B1.6 precluded any enhancement in her case for loss, leadership role, or number of victims; and (2) her two-year sentence for aggravated identity theft violates the Supreme Court's holding in *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013). Doc. No. 20.

### Application Note 2 to U.S.S.G. § 2B1.6

The Sentencing Guidelines provide that the sentence for a defendant convicted of aggravated identity theft under § 1028A is the statutory term of imprisonment.  U.S.S.G. § 2B1.6.  The Guidelines commentary elaborates that:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense.  A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under [U.S.S.G.] § 1B1.3 (Relevant Conduct).  "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).

U.S.S.G. § 2B1.6, cmnt. n.2.  "Means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any ... (A) name, social security number, [or] date of birth...." 18 U.S.C.

15

§ 1028(d)(7)(A).

The Eleventh Circuit has held that Application Note 2 precludes the application of additional enhancements only if those enhancements pertain specifically to the "transfer, possession, or use of a means of identification." *See United States v. Cruz*, 713 F.3d 600, 607-08 (11th Cir. 2013) (affirming application of § 2B1.1(b)(10)(A)(i) use of-device-making-equipment enhancements, which did not concern the use of a means of identification, to the base offense levels associated with § 1028A, since the plain language of Application Note 2 did not bar the application of all "relevant conduct" enhancements); *United States v. Charles,* 757 F.3d 1222, 1227 (11th Cir. 2014) (reversing the application of a § 2B1.1(b)(11)(B)(i) trafficking-of-an-unauthorized-access-device enhancement to a defendant also convicted under § 1028A).

Here, the enhancements imposed against Fergerson for loss, leadership role, and number of victims did not pertain specifically to the "transfer, possession, or use of a means of identification." The enhancement were predicated only on the amount of loss, Fergerson's role in the conspiracy, and the number of victims – not victimization by use of a means of identification. Thus, Application Note 2 does not apply to the enhancements in her case. *See, e.g., United States v. Davis*, 586 Fed. App'x 534, 539 (11th Cir. 2014); *United States v. Anderson*, 532 Fed. App'x 373, 378-79 (4th Cir. 2013). Moreover, the enhancements in Fergerson's case were used to calculate her guidelines regarding the conspiracy count and the wire fraud count, not the aggravated-identity-theft count; i.e., the enhancements did not

16

pertain to aggravated identity theft.   Consequently, Fergerson's trial counsel was not
ineffective for failing to argue that Application Note 2 to § 2B1.6 precluded any
enhancement in her case for loss, leadership role, or number of victims.  Such an argument
would have been meritless.

<em>Alleyne</em> Claim

The argument behind Fergerson's *Alleyne* claim and the supposed impropriety of her
sentence for aggravated identity theft is not clear.  Suffice it to say, though, *Alleyne* is not
retroactively applicable to cases on collateral review and is therefore procedurally barred and
time-barred as a basis for Fergerson to obtain relief.  *Chester v. Warden*, 552 Fed. App'x
887, 891 (11th Cir. 2014) ("*Alleyne*'s rule does not apply retroactively on collateral review.");
*United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014); *Barkley v. Hastings*, 2014
WL 808079, at *5 (S.D. Ga. Feb. 28, 2014).   Further, *Alleyne* holds that a defendant's
statutory mandatory minimum sentence may not be increased based on judicial factfinding.
133 S.Ct. at 2155.   By pleading guilty to the aggravated-identity-theft count, Fergerson
admitted to all facts necessary to allow the district court to impose the mandatory two-year
sentence for that offense.   Her mandatory minimum sentence for aggravated identity theft
was not based on judicial factfinding, but rather on her own admissions to having committed
all elements of the offense.   Therefore, Fergerson raises no meritorious *Alleyne* claim, and
she is not entitled to any relief.

17

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Fergerson be DENIED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before August 25, 2015**.   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 11th day of August, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

18